THOMAS VARCO *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

November 17, 1882.

**Railroad Fences—Duty to keep in Repair.**—The duty of a railway company to maintain its fences already built is discharged by the exercise of reasonable care and diligence, and they may be temporarily prostrate or broken without a breach of such duty.

**Same—Evidence of Negligence.**—But where it appeared that plaintiff's horses escaped through a breach in the railroad fence adjoining his pasture, and were killed by defendant's cars, and that such defect was patent, and had previously existed for two weeks or more, *held*, presumptive evidence of negligence on defendant's part in failing to repair the same.

**Same—Damages—Interest.**—Interest on the value of property lost or destroyed through the negligence of the railway company may be properly included in the damages.

**Special Findings—Objections, when to be Taken.**—Objections to the form of certain special findings, wherein the interrogatories are substantially met by the answers of the jury, are waived unless taken on the rendition of the verdict.

Plaintiff brought this action in the district court for Mower county, to recover the value of two colts killed by a passing locomotive on

defendant's railway track.    At the trial before *Farmer*, J., the jury returned a general verdict for plaintiff, and also the following special findings, in answer to questions submitted by the court:

"1. What was the value of each of said horses?    Answer: Gray colt, $125; brown colt, $100.

"2. Were the horses on the highway when struck?    Answer: No.

"3. Were the horses struck or injured by reason of the wilful acts of defendant's engineer?    Answer: By their negligence.

"4. How long had the defect caused by the burning of the post in the fence existed at the time the horses were struck?    Answer: Preponderance of evidence two or three weeks.

"5. Had the defendant or any of its employes any actual knowledge or notice that said post was burned out prior to plaintiff's horses being struck? and if so, how long before?    Answer: Implied, of from two to three weeks as shown by testimony.

"6. Were the horses north or south of the cattle-guard shown on the plat in evidence, when they were struck?    Answer: North, or in the act of jumping the guard."    (North of the cattle-guard would be within the enclosed right of way.)

Defendant appeals from an order refusing a new trial.    The case is stated in the opinion.

*M. B. Cary, D. S. Wegg* and *Geo. E. Clarke*, for appellant.

The court erred in admitting the statements of the section foreman. *Mundhenk* v. *Cent. Iowa Ry. Co.*, 11 N. W. Rep. 656; *Lafayette & Ind. R. Co.* v. *Ehman*, 30 Ind. 83; *Verry* v. *Burlington, C. R. & M. R. Co.*, 47 Iowa, 549; *Robinson* v. *Fitchburg & W. R. Co.*, 7 Gray, 92; Story on Agency, § 134.

It was error to instruct the jury that the defendant was bound to maintain good and sufficient fences at all times.    *Aylesworth* v. *Chicago, etc. R. Co.*, 30 Iowa, 459; *Lemmon* v. *Chicago & N. W. Ry. Co.*, 32 Iowa, 151; *Illinois C. R. Co.* v. *Swearingen*, 47 Ill. 206; *Chicago & N. W. Ry. Co.* v. *Barrie*, 55 Ill. 226; *Toledo & W. Ry. Co.* v. *Daniels*, 21 Ind. 256; *Murray* v. *N. Y. C. R. Co.*, 4 Keyes, 274; *Morrison* v. *N. Y. & N. H. R. Co.*, 32 Barb. 568; *McDowell* v. *N. Y. C. R. Co.*, 37 Barb. 195.

Interest does not run on unliquidated sums and torts and therefore should not have been allowed. *Still* v. *Hall*, 20 Wend. 51; *Marshall* v. *Schricker*, 63 Mo. 308; *Hanson* v. *Vernon*, 27 Iowa, 28; Sedgwick on Damages, 432 (5th Ed.;) 3 Parsons on Contracts, 105.

*J. M. Greenman*, for respondent.

Interest was properly allowed. *Chicago & N. W. Ry. Co.* v. *Shultz*, 55 Ill. 421; *Minneapolis Harvester Works* v. *Bonnallie*, 29 Minn. 373.

VANDERBURGH, J. The complaint alleges that two colts, the property of plaintiff, escaped from his land through a defective railroad fence, which defendant corporation had neglected to repair, and were killed by its engine. The answer does not deny that the injury complained of was caused by defendant's engine on the track, but denies that it was caused by any negligence on defendant's part in failing to maintain and keep its fence in repair or otherwise.

1. The theory of the defence is that the animals were killed on a highway crossing near by, intersecting the railroad just south of a cattle-guard which is also situated some distance south of the alleged breach in the fence, and hence it is claimed that, from the situation of the premises, they could not have escaped through the fence as alleged by plaintiff. But the jury find specially that the horses were not on the highway when struck, but were north of the cattle-guard, or in the act of jumping it, at the time, to support which there was some evidence. The evidence also shows that there was a breach in the fence of defendant adjoining the pasture of plaintiff, to which the animals had access at the time, caused by the burning of a post two or three weeks prior to this accident, and that the fence had remained out of repair during all that time, though the section men, who were charged with the duty of looking after the condition of the fences and track, passed over the track and along the premises nearly every day. These issues of fact were therefore settled by the verdict, and sufficient time had intervened before the injury to raise the presumption of notice to the company of the defect in the fence. Plaintiff's allegations of negligence in the premises must, therefore, be deemed sustained.

2. It also appears that the section foreman was charged with the duty of reporting and burying animals killed by the cars. One of these colts was killed outright, the other lived a day or two after the injury. He immediately buried the one already dead, and as to the other the plaintiff testified, under defendant's exception: "He told me to take good care of the colt, and he would report the colt injured. The colt died in a day or two, and I reported to him. He came and got the body out of the barn and buried it." These acts of the section foreman were directly in the line of his duty as to animals so killed or injured. As an admission, the evidence imported nothing further than that he had obeyed his instructions, without reference to the question of the circumstances which might have led to the accident. As the injury was admitted by the pleadings, we think the evidence immaterial, but it could not have prejudiced the defendant.

3. The jury were instructed, at plaintiff's request, that it was the duty of the defendant at all times to maintain a good and sufficient fence, as well as to build one. This the defendant insists was error. This language, rightly considered, does not mean that the liability of the company is absolute under all circumstances. Such duty is discharged by the exercise of reasonable care and diligence, and a railroad fence may be temporarily prostrate or broken without the fault or negligence of the company. But the court, in immediate connection with this instruction, in giving other of plaintiff's requests, as well as in its general charge, correctly instructed the jury as to the nature of the liability in such cases; and also, at the defendant's request, substantially charged that after defendant had once properly fenced its line, negligence could not be imputed to the company until the expiration of a reasonable time in which to make the repairs after notice of a defect or breach therein, and that, in the absence of proof of actual notice, it would be implied after a reasonable time. The jury could not well misapprehend the rule of liability intended to be laid down by the court. The lapse of time was sufficient in this case to raise the presumption of negligence.

In view of the special findings of the jury as to where the injury occurred, it is not material to consider the instructions given, or those

refused, in relation to the rule of liability for animals killed on a highway crossing.

The jury were also instructed, in case they found for the plaintiff, to allow interest on the value of the property from the time of the injury. This was proper. It is not a case in which exemplary damages were claimed or allowed, and the basis of plaintiff's claim for compensation is the value of the property destroyed. In such cases interest is necessarily allowed for the indemnity of the party. The same rule applies as in the case of conversion of property. *Parrott* v. *Ice Co.*, 46 N. Y. 361; *Derby* v. *Gallup*, 5 Minn. 85, (119;) *Nesbitt* v. *St. Paul Lumber Co.*, 21 Minn. 491; *Murphy* v. *Sherman*, 25 Minn. 196; 2 Sedgwick on Damages, 186, *n.*

The objection to the special verdict, that the answers to several of the questions submitted are not sufficiently direct and definite, cannot now be successfully urged. Taken together, we think the answers substantially meet the purposes of the interrogatories, and the objection to them was waived by not taking it on the rendition of the verdict. *Manny* v. *Griswold*, 21 Minn. 506.

Order affirmed.