## FELL v. UNION PAC. RY. CO.

No. 1815.   Decided March 8, 1907 (88 Pac. 1003).

1. PLEADING—AMENDMENT—CHANGING CAUSE OF ACTION. — Amendment of complaint, in an action for injury to stock while being carried on defendant's line, changing the destination of the stock from the end of defendant's line, as alleged in the original complaint, to a place beyond, is not a change of cause of action, and its allowance is not error; the damages being confined to the injuries occurring on defendant's line. [1]

2. DAMAGES—INTEREST—UNLIQUIDATED DAMAGES.—Damages for injury to a shipment while in transit is the amount of loss, with interest, from the time of delivery; the fact that the damages are unliquidated not being by itself reason for not allowing interest, but it is enough that the damages are to be computed as of a fixed time and according to fixed rules of evidence as to value. [2]

---

[1] Casady v. Casady (Utah), 88 Pac. 32.

[2] Woodland v. U. P. Ry. Co., 27 Utah 543, 26 Pac. 298; Rhemke v. Clinton, 2 Utah 230; Oregon S. L. R. Co. v. Jones, 29 Utah 147, 80 Pac. 732; Lester v. Min. Co., 27 Utah 470, 76 Pac. 341, 101 Am. St. Rep. 988; Nichols v. Railroad Co., 7 Utah 510, 27 Pac. 693.

APPEAL from District Court, Weber County; J. A. Howell, Judge.

Action by A. G. Fell against the Union Pacific Railway Company. Judgment for plaintiff.

Defendant appeals.

AFFIRMED.

*P. L. Williams, Geo. H. Smith* and *John G. Willis* for appellant.

*Heywood & McCormick* for respondent.

FRICK, J.

This is an action for damages for injury to live stock while in transit. The plaintiff (hereinafter called respondent) alleges that he delivered to and that the defendant (hereinafter designated appellant) received from him for transportation from Granger, Wyo., to Chicago, Ill., a certain number of sheep; that the appellant negligently delayed the same while in transit at Schuyler, Neb., for a period of 32 hours, without providing any facilities to feed and water them; that said sheep were confined in the cars of appellant without food or water for a period of 72 hours, by reason of which a large number of lambs died; that the others shrank in weight; that all that did not die were by such negligent delay in transportation affected thereby; and that respondent was compelled to and did sell them for 50 cents on the hundredweight less than they would have sold for if they had been promptly and seasonably transported and delivered at the place of destination. In view of the errors assigned, the pleadings need not be further noticed, except in the following particular: In both the first and amended complaints, the respondent alleged the destination of the sheep to have been Omaha, Neb., but in the second amended complaint alleged the destination as Chicago, Ill. This amendment was allowed by the court upon due notice and argument

and a long time prior to the trial of the cause, but the same was allowed over appellant's objection and exception. The cause was, by the consent of the parties, tried to the court without a jury, and the court specifically found that the death of the lambs, and shrinkage in weight, and the loss in price as alleged by respondent were all due to the negligence of appellant in delaying the sheep at Schuyler, Neb., for 32 hours, and in not providing facilities for food and water for the sheep for a period of 72 hours, and in confining them in cars for that length of time without food and water. The court also found the loss and damage to respondent for each item separately; that is, for loss by death, by shrinkage in weight, and for loss in price by reason of the condition of the sheep caused by the negligent delay in transportation and in not providing facilities to feed and water them. On the whole amount of damages as found, the court allowed legal interest, as appears from the findings, from the date on which respondent made demand on appellant for damages for the injury and loss. It is not very clear, however, whether the court intended to allow interest from the date the sheep were delivered at Chicago, the place of destination, or from the date of demand by respondent. In our view, for the purposes of this decision, it makes no difference from what date the court computed interest, because the date from which it was computed, as appears from the record, was subsequent to the date of delivery of the sheep at their destination. The court entered judgment for the amount found as damages, with interest thereon as aforesaid, against appellant, and hence this appeal.

There are but two assignments of error argued—indeed, in the state of the record, no other assignment could be reviewed by this. The first error assigned and argued is the one that the court erred in permitting the second amendment of the complaint changing the place of destination of the shipment from Omaha to Chicago. This second amendment may have been caused by the statement contained in the appellant's answer to the first amended complaint, where-

in it denied that the destination of the sheep was Omaha, and alleged that the destination was in fact Chicago, not Omaha. And it may have been due to the fact that the plaintiff alleged Omaha in his first complaint, because that was the end of appellant's line of road. The change made by the amendment was not a change or departure from the original cause of action. (*Casady v. Csaady* (Utah), 88 Pac. 32.) The delict of the appellant—the cause of damages and the amount thereof—was alleged precisely the same in all the complaints. Neither could the appellant have been misled thereby, as appears from the answer itself. Moreover, the court confined the damages strictly to the injury and consequent loss occasioned by the neglect of appellant on its own line of road, and appellant was thus not prejudiced by the amendment. The contention of appellant, we think, is answered in this respect in the case of *Missouri, K. & P. Ry. Co. v. Truskett,* 53 S. W. 444, 2 Ind. T. 633. This assignment therefore cannot be sustained.

The next and only other assignment of error relates to the allowance of interest by the court on the amount of damages found to have been sustained by the respondent. Appellant asserts that, this being an action for unliquidated damages sounding in tort, therefore interest cannot legally be allowed until the loss or damage is ascertained at the trial. It is further contended that such is the law of this state as appears from the decisions of this court. Before referring to our own decisions upon this question, we shall examine the question in the light of the authorities. While it is true that this is an action for a tort, and that the damages were unliquidated, the cause of action, nevertheless, arose out of a contract for carriage; that is, the reciprocal rights and duties arising out of the relation of carrier and shipper arose by virtue of a contract. Both parties insist on this in their pleadings, and such, in the nature of things, must be so. But, since appellant acted in the capacity of a common carrier, its duties and respondent's rights were governed by law, and, as there is no question presented for review in respect to the modification of the law by the con-

tract, we must treat this case, for the purposes of this decision, upon the law applicable to a common carrier of live stock regardless of any special contract. In view of the law, therefore, applicable to common carriers, where, through their negligence, a shipper suffers injury and damages to his property while in transit, or for negligent delay in transportation and delivering the same at the place of destination, what is the prevailing rule as to the amount of damages and the allowance of interest?

In the case of *New York, etc. Ry. Co. v. Estill,* 147 U. S. at page 622, 13 Sup. Ct. at page 456 (37 L. Ed. 401), the United States Supreme Court, in a case for injury to live stock while in transit, states the general rule as to the measure of damages in the following language:

"It is well settled as a general rule that the measure of damages in a case of a common carrier is the value of the goods intrusted to it for transportation, with interest from the time when they ought to have been delivered"—citing, among other authorities, Hutchinson on Carriers (2d Ed.) section 771, and 1 Sutherland on Damages, 629. And the court then proceeds further: "But when the matter appears to have been regulated by statute in the state, and the statute has been interpreted by its highest court, the regulation of the statute will be followed in the courts of the United States."

This was done in that case, and interest was not allowed only because the Supreme Court of Missouri, under the statute of that state, held that interest is not permitted in case of unliquidated damages, except in special cases. The rule is also stated by the same court, in the case of *Mobile & M. Ry. Co. v. Jurey,* 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527, where, in the syllabus, it is said:

"The measure of damages in an action against a common carrier for loss of goods in transit is their value at the point of destination, with legal interest."

In the case of *Wilson v. Troy,* 32 N. E. 44, 135 N. Y. 96, 18 L. R. A. 449, 31 Am. St. Rep. 817, the Court of Appeals of New York, in discussing the question now under consideration, at page 46 of 32 N. E., page 457 of 18 L. R. A. (135 N. Y. 96, 31 Am. St. Rep. 817), says:

"It is difficult to perceive any sound distinction between a case where the defendant converts or carries away the plaintiff's horse and a case where, through negligence on his part, the horse is injured so as to be valueless. There is no reason apparent for a different rule of damages in the one case than in the other."

Quite true that, notwithstanding the court here clearly points out that there can be no distinction in reason, the courts of New York, in deference to early decisions, still cling to the old theory that in certain cases it is for the jury to say whether interest shall be allowed or not. The question, however, is not relegated to the jury in cases like the one at bar, even in New York, as is manifest from the case of *Dana v. Feidler,* 12 N. Y. 40-50, 62 Am. Dec. 130. The following cases are all cases of injury to or destruction of personal property or live stock while in transit, and in all of them the measure of damages is stated to be the amount of loss, with legal interest from the time of delivery or loss: *Gulf, C. & S. F. Ry. Co. v. McCarty,* 82 Tex. 608, 18 S. W. 716; *Houston & F. C. Ry. Co. v. Jackson,* 62 Tex. 209; *So. Pac. Ry. Co. v. Anderson* (Tex. Civ. App.), 63 S. W. 1022; *Missouri, K. & P. Ry. Co. v. Trusket,* 53 S. W. 444, 2 Ind. T. 633; *St. L., etc., Ry. Co. v. Phelps,* 46 Ark. 485; *Jacksonville, T. & W. Co. v. Penn. T. & Mfg. Co.,* 27 Fla. 1, 157, 9 South, 661, 17 L. R. A. 33; *Erie Ry. Co. v. Lockwood,* 28 Ohio St. 358; *Illinois C. R. R. Co. v. Haynes,* 64 Miss. 604, 1 South, 765.

If we assume the case at bar to be one commonly called a case of pure tort for injury to or destruction of personal property through ordinary negligence, still the respondent was entitled to interest according to the great weight of authority. In 22 Cyc. 1500, the following is stated to be the law upon the subject of allowing interest for torts to property:

"While it has been laid down in many cases that interest will not be allowed on damages recovered for torts to property unless the defendant has derived some benefit from his tort, or has been guilty of gross negligence, the general rule supported by the great weight of authority is that in cases of torts to property interest on the damages will be allowed as a part of the damages and as an approximately uniform

measure of compensation." This text is amply sustained by the following authorities: *Woodland v. U. P. Ry. Co.*, 27 Utah 543, 26 Pac. 298; *Rhemke v. Clinton*, 2 Utah 230; *Varco v. Chicago, M. & St. P. Ry. Co.*, 30 Minn. 18, 13 N. W. 921; *Railway Co. v. Joachim*, 58 Tex. 456; *Fremont, E. & M. V. Ry. Co. v. Marley*, 25 Neb. 138, 40 N. W. 948, 13 Am. St. Rep. 482; *U. P. Ry. Co. v. Ray*, 46 Neb. 750, 65 N. W. 773; *Kendrick v. Towle*, 60 Mich. 363, 27 N. W. 567, 1 Am. St. Rep. 526; *Burdick v. Chicago, M. & St. P. Ry. Co.*, 87 Iowa, 384, 54 N. W. 439; *Johnson v. Chicago & N. W. Ry. Co.*, 77 Iowa 666, 52 N. W. 512; *Dean v. Chicago & N. W. Ry. Co.*, 43 Wis. 305; *Georgia P. Ry. Co. v. Fullerton*, 79 Ala. 298; *Frazer v. Bigelow C. Co.*, 141 Mass. 126, 4 N. E. 620; *Reagan v. New York & N. E. Ry. Co.*, 60 Conn. 124, 22 Atl. 503, 25 Am. St. Rep. 306; *Schmidt v. Nunan*, 63 Cal. 371.

While the foregoing by no means constitute all the authorities that could be cited upon the proposition, they are quite sufficient to show that the rule has become general, and that the allowance of interest in cases of torts to property is in harmony with the trend of modern authority. It is quite true that there are cases against this rule, but they are not, as we conceive, based on either good reason or good logic. The rule adhered to in the Kansas and other like cases, as instances where interest is allowed if it appears that the person committing the wrong has to some extent been benefited from it, is, to our minds, manifestly unjust. In such cases interest is not allowed as compensation at all, but upon the sole ground that the person in the wrong must yield up the benefits derived by him to the one to whom they belong by reason of ownership. It is a matter of simple restoration of what has been withheld without adding anything for the use. It is only a mild way of offering a premium to withhold pay in such cases. Is there any reason why a person sustaining injury and damage to his property from the negligent act of another should not receive just what he has lost as nearly as this may be accomplished in a court of justice? If a person's property is destroyed or damaged, why is he not entitled to be compensated to the full extent of its value in money so that he may replace the same with other property of a like nature? If on the day of its injury or destruction he restores or replaces it with his own money, why is he not entitled to interest on that money to the date of re-

payment? If he had loaned the money to some one, he certainly would be entitled to interest, and, if he borrowed it from some one, he would likely have to pay interest for its use. By being awarded legal interest, therefore, he is simply placed *in statu quo,* and nothing short of this is full compensation, and that is just what the law aims to accomplish. Is it an answer to say that the damages are unliquidated, and therefore interest is not to be allowed? This, to our minds, is no reason at all in case of injury to or destruction of property. In all such cases the party sustaining the loss is limited in his recovery to the market or actual value of the property at the time of the injury or destruction. Moreover, he must establish the amount of the loss by some fixed rule or standard, and the evidence must be confined thereto, and either the court or jury must find the value in accordance with the evidence. In the class of cases, therefore, where the damage is complete, and the amount of the loss is fixed as of a particular time, there is—there can be—no reason why interest should be withheld merely because the damages are unliquidated. There are certain cases of unliquidated damages where interest cannot be allowed. In all personal injury cases, cases of death by wrongful act, libel, slander, false imprisonment, malicious prosecution, assault and battery, and all cases where the damages are incomplete and are peculiarly within the province of the jury to assess at the time of the trial, no interest is permissible. But this is so because the damages are continuing and may even reach beyond the time of trial.

There are also other cases where interest is not allowed, such as where exemplary damages are permitted, where the statute fixes a penalty or determines the damages to be allowed. Of the latter class of cases, *Oregon S. L. R. Co. v. Jones,* 29 Utah 147, 80 Pac. 732, is, in part, an illustration. Some courts also seem to make a distinction between gross or willful negligence and ordinary negligence. In the former, interest is given; in the latter it is withheld. This is arbitrary at best. The loss to the injured person is precisely the same in either case, and he should receive compensation

—no more, no less. There is another class of cases where the
matter is relegated to the jury or the court trying the case
to allow interest or not, as in their judgment may seem
proper, as a part of the damages to be allowed. This rule
does not seem to be based upon any sound reason. Moreover,
it must lead to uncertainty, and may tend to favortism in its
application. In one case the jury may allow 20 per cent.,
in another only 2, and in another none at all, although the
cases may be essentially the same. If the law is to be treated
as a science, it should be as nearly exact as it can be made,
and its operation should be uniform. In those cases the
courts hold that, if the amount allowed by the jury in the
form of interest makes the damages excessive, then the courts
will require a remittitur of the excess or grant a new trial.
The whole matter, then, resolves itself into a question of ex-
cessive damages. If the amount allowed by the jury is ex-
cessive—that is, not supported by the evidence when con-
sidered as a whole—in cases where the amount of damage is
to be ascertained as of a particular time and in accordance
with fixed rules of evidence and known standards of value,
or if the damages allowed are excessive, appearing to have
been given under the influence of passion or prejudice, the
trial courts should, when a motion for a new trial is made
upon that ground, require a remittitur of the excess, or grant
a new trial. The power and discretion to do this is ex-
pressly vested in the trial courts of this state, and should be
exercised whenever it is manifest that justice and right re-
quire it, and, unless this appears, the courts should not in-
terfere with the verdict of the jury. When excessive dam-
ages are allowed, the case should be treated and corrected as
such, and not by this court or any court assuming the power
to arbitrarily withhold interest in all cases of unliquidated
damages. General justice is never promoted by an effort to
reach it by ignoring sound principles of law in particular
cases. Whenever possible, it ought not be left to the mere
caprice of either court or jury to either grant or withhold
that which is due. A fixed rule, when based on sound prin-
ciples, is, in most instances, a safer guide than the judg-

ment of a few individuals, however honest or pure their mo-
tives.

Counsel for appellant, however, rely on the case of *Les-
ter v. Min. Co.*, 27 Utah 470, 76 Pac. 341, 101 Am. St. Rep.
988, where it is broadly held by this court that interest is
not allowable in cases of tort for unliquidated damages.
That case, however, is, as we have attempted to show, not
only against reason, but against the great weight of au-
thority. Moreover, it is against the rule laid down by this
court in the cases of *Rhemke v. Clinton* and *Woodland v.
U. P.*, supra. The latter case should have been reported in
7 Utah, but is found in 27 Utah 543, 26 Pac. 298. The rule,
therefore, that we have announced herein has practically
been the rule of this state since the decision in 2 Utah supra,
and that case has been cited by both text-writers and courts
as placing Utah in the category of states allowing interest,
in cases of torts to property, from the time of injury or de-
struction. In the *Lester Case,* supra, no authority is cited,
except the case of *Nichols v. Railroad Co.*, 7 Utah 510, 27
Pac. 693. The other two cases are not mentioned. An ex-
amination of the *Nichols Case* discloses that it was correctly
decided, and is in accordance with the view herein expressed,
since it falls within that class of cases where the damages
were continuing, and therefore entirely within the province
of the jury to fix and assess as of the time of trial. The case
therefore was not an authority upon the question decided
in the *Lester Case.* While we have not been able to find
any cases, except from Missouri (undoubtedly there are
such), that withhold interest in a case like the one at bar, we
do not desire for that reason to make a distinction in respect
to the *Lester Case,* where there is no difference in principle.
Counsel for appellant therefore had a right to rely on the
*Lester Case,* but, as that case is wrong in principle, in rea-
son, and against the great weight of authority, as well as
against the former decisions of this court upon the subject,
it should be, and accordingly is, overruled upon the subject
of allowing interest in cases of unliquidated damages.

Counsel for appellant also cite some other cases. The California cases, as well as the Nevada case, are all based upon statutes which those courts construe as forbidding interest in the class of cases passed upon. Our statute (section 1241, Rev. St. 1898) is general, allowing interest in all cases at the legal rate, in the absence of an agreement. Moreover, with perhaps one or two exceptions, all the cases cited by counsel are readily distinguishable from the case at bar. In most of them the matter of the amount to be allowed as damages was not controlled by either a fixed time or by known standards of value, and are thus decided in accordance with the principles adopted by us in this case.

The true test to be applied as to whether interest should be allowed before judgment in a given case or not is, therefore, not whether the damages are unliquidated or otherwise, but whether the injury and consequent damages are complete and must be ascertained as of a particular time and in accordance with fixed rules of evidence and known standards of value, which the court or jury must follow in fixing the amount, rather than be guided by their best judgment in assessing the amount to be allowed for past as well as for future injury, or for elements that cannot be measured by any fixed standards of value. The same rule under the same conditions would of necessity apply to actions for breach of contract. This is illustrated by some of the California cases, as well as by the Nevada case cited by counsel for appellant. As the case at bar falls clearly within the rule where the amount is computed as of a fixed time, and in accordance with fixed rules of evidence as to value, the court did not err in computing, on the amount of damages found, interest at the legal rate.

The judgment therefore is affirmed, with costs.

McCARTY, C. J., and STRAUP, J., concur.